UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CECILLE ROCKETT and<br>TERRANCE SMITH,<br><br>    Plaintiffs,<br><br>v.<br><br>MICHAEL RENTH, CHRISTOPHER<br>BURNS, and CITY OF MADISON,<br><br>    Defendants. | Case No.:  3:14-cv-00687-DRH-PMF |

### MEMORANDUM OBJECTING TO DEFENDANT'S MOTION TO BIFURCATE PLAINTIFF'S CLAIMS AND TO STAY DISCOVERY AND TRIAL ON THE MONELL CLAIMS AGAINST THE CITY AND CHRISTOPHER BURNS

The defendants have filed a motion to bifurcate the plaintiffs' *Monell* claims and to stay both the discovery and the trial of both defendants Burns and the City of Madison.  See Motion to Bifurcate, doc. 24. The defendants make six arguments, separated into two categories.  *Id*. The first category is that bifurcation is in the best interest of judicial economy. *Id*. at p. 5.  In that category the defendant makes the following arguments.  First, the liability of defendants Burns and City of Madison is dependent upon a finding that defendant Renth is liable.  *Id*. at p. 5. Second, defendant Renth's defense of qualified immunity should not prevent bifurcation. *Id*. at p. 8. Third, the defendant City of Madison has stipulated to an entry of judgment against it if defendant Renth is found to have violated the plaintiff's constitutional rights.  Fourth the plaintiffs, as a matter of law, cannot recover additional compensatory damages against the defendants Burns and the City of Madison after a jury finds against defendant Renth.  Fifth, bifurcation will save the parties the unnecessary burden of discovery on the plaintiffs' *Monell* claims.  There's only one argument in the second category: refusal to bifurcate will result in

undue prejudice to defendant Renth. The defendant's motion should be denied as it overstates both the prejudice against defendant Renth and the potential economic benefits.

    I.    **IT IS NOT IN THE BEST INTEREST OF JUDICIAL ECONOMY TO BIFURCATE PLAINTIFF'S CLAIMS**

The defendants' argument that bifurcation of the claims is in the best interest of judicial economy is completely speculative. It is based upon the assumption that the plaintiffs will not be successful against defendant Renth. If the plaintiffs are successful, then there will be two rounds of discovery, two trials to prepare, two juries will have to be empaneled and two trials will occur, all with redundant evidence and witnesses.  "Such a result would excessively prolong this case and would not serve judicial economy." *Terry v. Cook County*, 2010 WL 2720754 (N.D. Ill.), *Marcum v. Scioto County, Ohio*, 2012 WL 2674303 (S.D. Ohio).

    a.    <u>THE LIABILITY OF DEFENDANTS BURNS AND THE CITY OF MADISON IS NOT NECESSARILY DEPENDENT UPON DEFENDANT RENTH BEING FOUND LIABLE FIRST</u>

The defendants' argument that defendant Renth must be found liable before the other two defendants could be held liable is misplaced. This case is similar to *Marshbanks v. Calumet City*, 2015 WL 1234930 (N.D. Ill.).  In *Marshbanks*, the plaintiff's section 1983 civil rights lawsuit against Calumet City alleged use of excessive force when officers shot and killed Archie Lee Chambers. *Id*.   In that case, the Court agreed with the plaintiff that the defendants could argue at trial that the plaintiff failed to prove which particular officer had used excessive force. *Id*. Essentially, the jury may agree that an officer violated the decedent's constitutional rights but be unable to agree as to which particular officer. They could also agree that what drove the officer to violate the decedent's constitutional rights was either due to a custom of constitutional violations or a failure to train and supervise the officers.  In that case, it would not be

inconsistent to find the Calumet City liable but be unable to find against any particular officer. *Id*.

A similar situation exists in the present case. Plaintiff Terrance Smith was thrown down on a concrete sidewalk by Madison police officer J.D. Harris, who is not a defendant in the present case. See Complaint, doc. 2, p. 9. The Complaint alleges that defendant Renth's actions caused injuries to Terrance's head, right shoulder, back, and right knee, with abrasions to the right side of his face, right knee, and right elbow. *Id*. As in *Marshbanks*, it seems somewhat probable that the defendants at trial will argue that Terrance failed to prove that it was defendant Renth who causes injuries and not officer Harris when Harris threw Terrance down on the concrete sidewalk. It would be consistent for a jury to find in favor of defendant Renth because they believe that Harris violated Terrance's constitutional rights and to also find that what motivated Harris was the custom of violence and violation of constitutional rights or the lack of training and supervision and find the City of Madison and Burns liable. If the Court adopts the defendants' position, however, then the plaintiffs would be barred from its rightful claim against both defendants Burns and the City of Madison. As pointed out in the *Marshbanks* case, this is the type of scenario contemplated by the Seventh Circuit in *Thomas v. Cook County*, 604 F.3d 293 (7th Cir. 2009), where the court held it would be possible to hold a municipality liable even when the officers are not. *Marshbanks*, p. 5.

In *Marshbanks*, the Court notes that the plaintiff had asked one officer to admit that his single shot did not strike the decedent but that officer "objected and asserted a lack of knowledge." *Marshbanks*, at p. 4. Although a similar request to admit has not been submitted to the defendants, it is still early in the discovery process and discovery is ongoing.

The defendants' argument that defendants Burns and the City of Madison could not be liable without a finding that defendant Renth is liable is obviously incorrect for the reasons stated above. Most of the defendant's motion is based upon this argument. Since it is incorrect, the defendants' motion for bifurcation and a stay of discovery and trials should be denied.

    b. <u>THE DEFENSE OF QUALIFIED IMMUNITY WOULD PREVENT AN INCONSISTENT VERDICT AND THEREFORE ALLEVIATE THE NEED FOR BIFURCATION</u>

The defendants argues that defendant Renth's defense of "qualified immunity should not prevent bifurcation." See Def. Motion at Doc. 24, p. 8. The defendants then argues that since the odds of prevailing on the qualified immunity defense are remote if the allegations are true, the defense would provide no bar to bifurcation. The defendants also argue, in the same section, that the Court should separate defendant Renth's case from the other two defendants' cases to eliminate the possibility of an inconsistent verdict. *Id*. at p. 7. With a qualified immunity defense, however, a jury could find that the injuries were caused by the City's policies and find the City liable and not the individual officer. *Marshbanks*, at p. 5. This eliminates the possibility of inconsistent verdict. Additionally, even if the odds are remote that the qualified immunity defense would be successful, the defendants must believe that the defense has some merit or it would have been unethical to have raised it.

    c. <u>STIPULATING TO JUDGMENT AGAINST THE DEFENDANT CITY OF MADISON IS INSUFFICIENT TO JUSTIFY BIFURCATION</u>

The defendants have offered to stipulate to judgment against the defendant City of Madison if defendant Renth is held liable. "[A] stipulation [to judgment] alone is insufficient to justify bifurcation. As the Court noted in Carter 'a plaintiff has the right to select the claims that he wishes to pursue, and [ ] even if pursuing a *Monell* claim may have minimal pecuniary

reward, the potential to deter future official misconduct is itself a proper object of our system of tort liability.'" *Warren v. Dart*, 2012 WL 1866372, p. 2 (N.D. Ill.) (Citations omitted).

If the Court grants the defendant's motion, then defendants Burns and the City of Madison will be guaranteed that neither will have their actions investigated. This appears to be not only an attempt to avoid discovery and trial but to also "circumvent the public policy goals of *Monell* claims by insulating the city from litigating and accepting responsibility if their practices and policies result in constitutional injuries." *Giles v. Ludwig and the City of Chicago*, 2013 WL 6512683, p. 4, n. 1 (N.D. Ill.).

    d.   THE PLAINTIFF IS ALLOWED TO PURSUE NONECONOMIC BENEFITS IN SUING THE DEFENDANT CITY OF MADISON

The defendants argue that if the plaintiffs are successful against defendant Renth, then no additional compensatory damages could be recovered. See Def. Motion, Doc. 24 at p. 9.  As pointed out in *Giles*, "there are significant non-economic benefits to suing a municipality, such as accountability for, and deterrence of, civil rights violations.… [m]ere monetary compensation for constitutional injuries may not have the same deterrent effect as a judgment naming the municipality as responsible based on its policies and customs." *Giles*, at p. 3.  The "Plaintiff has the right to select the claims which she wishes to pursue, and that even if pursuing a *Monell* claim may have minimal pecuniary reward, the potential to deter future official misconduct is itself 'a proper object of our system of tort liability'" *Terry*, at page 2. (Citations omitted).

    e.   BIFURCATING THE CLAIMS COULD COMPLICATE DISCOVERY DUE TO AN OVERLAP OF WHAT EVIDENCE WOULD BE SOLELY INDIVIDUAL AND WHAT WOULD BE PART OF THE *MONELL* CLAIM

The defendants also argue that bifurcation will save the parties unnecessary effort and expense in *Monell* discovery.  It should be noted that the defendants submitted discovery request

on behalf of both defendants Burns and the City of Madison. The motion to stay discovery was filed after the plaintiffs had responded to the discovery request from defendants Burns and the City of Madison. There was no indication before the plaintiff put forth substantial effort to respond to the defendants' discovery requests that they would be filing a motion to stay discovery on behalf of defendants Burns and the City. Obviously there would be additional discovery to complete if the stay is not granted but the City has gained an unfair advantage by waiting until the plaintiff responded to defendant Burns and the City's discovery requests.

It is quite possible, however, that bifurcation may complicate discovery issues due to an overlap of what would be considered discovery for the individual claim as opposed to discovery for the *Monell* claims. *Terry*, at p. 3; *Warren*, at p. 3. Since the discovery rules permit very broad discovery of not only relevant evidence but any information which might lead to relevant evidence, it's very easy to understand how there would have to be overlapping areas of discovery between the individual and *Monell* claims. Staying discovery will not simplify discovery. To the contrary, it will complicate it.

Additionally, given the defendants certification of entry of judgment against defendant City of Madison, "it would be almost impossible for litigants to ever discover, and bring to light, evidence of governmental abuses." *Daniels v. Sioux City*, 294 F.R.D. 509, 512 (N.D. Iowa, 2013). If the plaintiffs win and prove defendant Renth violated their constitutional rights, then discovery would be limited to proof of damages. If the plaintiffs lose, then no discovery of the City and Burns would be done. "A stay of discovery with regard to a *Monell* claim would, then, amount in most cases to a permanent stay. Litigants would rarely, if ever, have the opportunity to use interrogatories, document request, depositions and other discovery tools to investigate policies and customs that may encourage unconstitutional abuses of power.… It is long been

recognized that civil rights litigation involves more than the possible exchange of money." *Daniels*, at 512 – 513.

## II. THE RISK OF PREJUDICE TO DEFENDANT RENTH IS OVERSTATED BY THE DEFENDANTS

The defendants' final argument is that bifurcation is necessary to prevent "undue" prejudice against defendant Renth. The Courts have made it clear, however, that any potential prejudice could be avoided through the use of a cautionary instruction, motions *in limine*, and the rules of evidence. *Giles*, at p. 3; *Marcum*, at p. 3 (suggesting the use of a special verdict form and well adapted jury charges); *Bastilla v. Village of Cahokia*, 2010 WL 119132, p. 4 (S.D. Ill).[1]

Additionally, defendant's Motion fails to mention the potential prejudice to the plaintiff. Bifurcation "runs the irremediable risk of prejudicing plaintiff by depriving her 'legitimate right to place before the jury the circumstances and atmosphere of the entire case of action.'" *Marcum*, at p. 3. With the consent of judgment form, the plaintiffs would never get to have their day in court against defendants Burns and the City of Madison except for the determination of damages.

The plaintiffs would also suffer from delay of the case. *Terry*, at p. 2. Suppose, hypothetically, the plaintiffs are victorious against defendant Renth. Although the defendants have signed a consent to judgment form, the form does not specify when it would take effect. What if defendant Renth chooses to exercise his right to appeal the jury verdict against him? Given the Motion's emphasis upon the possibility of inconsistent verdicts, wouldn't the defendants insist upon waiting for the appeal outcome before even beginning the damages portion of the case against the defendants Burns and City of Madison? Regardless of the appeal outcome, defendant Renth would have the right to request both reconsideration and further appeal. It is very likely that the plaintiffs would suffer more prejudice than the defendants.

---

[1] The *Bastilla* case was attached as Exhibit 7 to the defendants' motion.

For these reasons, the plaintiffs object to the defendants' Motion and ask that it be denied.

                                                ELLIS LAW FIRM

                                               ___s/Jim Ellis_____
                                               Jim Ellis, #6229208
                                               Attorney for Plaintiff

ELLIS LAW FIRM
P.O. Box 23263
Belleville, IL  62223-0263
(618) 235-1341 telephone
(888) 577-5855 facsimile
Ellislawfirm@att.net

## PROOF OF SERVICE

The undersigned certifies that on this 20th day of July, 2015, the foregoing document was served upon the attorneys and parties listed below in the above cause by filing the foregoing document with the CM / ECF filing system and the Clerk will send a copy to the parties at their electronic business address as disclosed by the pleadings of record herein.

Julie A. Bruch, #6215813
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062

                                               ___s/  Jim Ellis_____