IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CECILLE ROCKETT and
TERRANCE SMITH,

Plaintiffs,

v.

MICHAEL RENTH, CHRISTOPHER
BURNS, and CITY OF MADISON

Defendants.                                                No. 14-cv-687-DRH

MEMORANDUM AND ORDER

HERNDON, District Judge:

I.   Introduction and Background

Pending before the Court is defendant Michael Renth, Christopher Burns, and City of Madison's motion to bifurcate plaintiff's claims and stay discovery (Doc. 24). Specifically, defendants move pursuant to FEDERAL RULE OF CIVIL PROCEDURE 42(b) to bifurcate the claims against Defendant Renth from the claims against Christopher Burns, and City of Madison (hereinafter "The City") under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)[1]. They also seek a stay of discovery and trial until the claims against Defendant Renth are resolved. Plaintiffs Cecille Rockett and Terrance Smith

---

[1] In *Monell*, the United States Supreme Court held that while a local government cannot be subject to vicarious liability under Section 1983, a plaintiff may establish direct liability against a local government agency under Section 1983 when "execution of a government's policy or custom, whether made by its lawmakers or by those edicts or acts may fairly be said to represent official policy, inflicts the injury ..." 436 U.S. 658, 694.

oppose bifurcation of this matter (Doc. 25). For the reasons discussed below, the motion is denied.

## II. Background

Plaintiffs Cecille Rockett and Terrance Smith allege that on June 14, 2013, Madison Police Officer J.D. Harris, who is not a party to this action, was in the course of arresting Rockett's son in front of her home when Detective Renth arrived on that scene, walked up to the plaintiff, grabbed her, and threw her to the ground near the curb (Doc. 2). Rockett alleges that Renth charged her with obstructing a peace officer in order to justify his unprovoked attack upon her (Doc. 2). Plaintiff Smith alleges that Renth tasered him and kicked him in the head, despite that fact that Smith was restrained on the ground by Officer Harris at the time. Defendant Renth's actions allegedly caused injuries to Smith's head, right shoulder, back, and right knee, and resulted in abrasions to the right side of his face, right knee, and right elbow (*Id.*).

Plaintiff Cecille Rockett includes in the complaint an excessive force claim brought pursuant to 42 U.S.C. § 1983 against Renth (Count I), a battery claim against Renth (Count II), a malicious prosecution claim against Renth (Count III), a false arrest claim against Renth (Count IV), a Section 1983 *Monell* claim against Chief Christopher Burns (Count V), and a Section 1983 *Monell* claim against the City of Madison (Count VI). In addition, plaintiff Terrence Smith includes in the complaint a Section 1983 excessive force claim against Renth (Count VII), a battery claim against Renth (Count VIII), a Section 1983 Monell claim against

Chief Christopher Burns (Count XI), and a Section 1983 Monell claim against the City (Count XII).

Defendants now move pursuant to FEDERAL RULE OF CIVIL PROCEDURE 42(b) to bifurcate the *Monell* claims against the City and Chief Burns from the claims against Detective Renth, and to stay discovery and the trial on the *Monell* claims until resolution of the claims against Renth (Doc. 24). Plaintiffs oppose the proposed bifurcation arguing that the defendants overemphasize the alleged prejudice against defendant Renth and the potential economic benefits of bifurcation in this matter (Doc 25).

### III.   Motion to Bifurcate

FEDERAL RULE OF CIVIL PROCEDURE 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." However, "[t]he piecemeal trial of separate issues in a single lawsuit . . . is not to be the usual course." 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 3d § 2388* (2008); see also *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 626 (N.D. Ill. 2000) ("An order of separate trials is the exception, not the rule."). A decision on whether to bifurcate or to hold separate trials is left to the sound discretion of the district court. *Volkman v. Ryker*, 736 F.3d 1084, 1089 (7th Cir. 2013). In considering bifurcation, the district court must be mindful that the Federal Rules "should be construed and

administered to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. Additionally, certain conditions must be met in order to support a motion to bifurcate. A court must determine if separate trials would prevent prejudice to a party or serve the purpose of judicial economy, though only one of these criteria need be met. *Chlopek v. Federal Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007); *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir.1999). After a court determines one of the criteria is satisfied, it may bifurcate the trial "as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Id*.

### IV. Analysis

In this case, the defendants argue that the Court should bifurcate the *Monell* claims for purposes of discovery and trial and stay the *Monell* discovery because bifurcation would serve the interests of efficient litigation and judicial economy and would help prevent undue prejudice to Renth (Doc. 24). Specifically, the defendants argue that bifurcation would promote judicial economy because the liability of defendants Burns and City of Madison is dependent upon a finding that defendant Renth is liable. Also, the defendants argue that bifurcation will save the parties "burdensome and potentially unnecessary" discovery costs and prevent undue prejudice to Renth (Doc. 24). The Court will address the arguments below.

**A. Judicial Efficiency and Economy**

Defendants first argue that bifurcating the *Monell* claims and staying the related discovery would serve the interest of litigation and judicial economy in this matter because Renth's liability is "inextricably linked" to the claims against Burns and the City of Madison, and bifurcation would minimize the burden of *Monell* discovery (Doc. 24). In response, the plaintiffs contend that the defendants' arguments are mere speculation, and in fact, bifurcation would not aid in the resolution of this case. The Court agrees with the plaintiff and is not persuaded by the defendants' judicial economy argument.

Defendants cite to the Supreme Court's decision in *City of Los Angeles v. Heller*, 475 U.S. 796 (1986), where the Court held that a trial court correctly dismissed excessive force and arrest without probable cause claims against a municipality after the jury found the individual officer not liable. *Heller*, 475 U.S. at 798–99. Defendants use *Heller* to argue that in this case, both the City of Madison's and Christopher Burns' liability rests on that of Renth. The Seventh Circuit in *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293 (7th Cir.2009), interpreted the *Heller* rule to mean that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." *Thomas*, 604 F.3d at 305 (emphasis in original).

To determine whether a municipality's liability is dependent on the actions of its officers, *Thomas* set forth three factors to consider: (1) the nature of the constitutional violation that the plaintiff alleges; (2) the theory of municipal

liability that supports the *Monell* claim; and (3) the defenses that the individual defendants have asserted. *Id*.

In the complaint (Doc. 2), Rockett and Smith assert Fourth Amendment claims alleging that their constitutional rights were violated through the City of Madison and Chief Burns permitting the use of excessive force by officers, failing to adequately train and supervise officers, and developing a custom that authorizes or condones police misconduct (Doc. 2). Plaintiffs' complaint also addresses previous excessive force allegations, and mentions officer J.D. Harris's role—a Madison police officer who is not a party to this action— in the incident that occurred on June 14, 2013 in relation to their theory of municipal liability.

Thus, an adverse finding as to the plaintiffs' individual claims does not necessarily dispose of the *Monell* claims against the City and Burns. See *Thomas*, 604 F.3d 293. In a situation where a claim addresses the customary practice as to how the police department trains its officers and disciplines its officers who were shown to have used excessive force, bifurcation may not be warranted. Even when a plaintiff loses his claim against a police officer based on a qualified immunity defense, he may still recover against the municipality if he can prove a constitutional deprivation caused by a municipal policy or custom. In this situation, bifurcation will not avoid a second trial, and that second *Monell* trial would surely contain duplicative evidence and testimony related to the trial of the claims against the individual officer, while still falling within the parameters of *Thomas*.

Furthermore, Renth, as an individual defendant, asserts a qualified immunity defense. Defendants argue that that since Renth's likelihood of prevailing on the qualified immunity defense is low, his defense would not prevent bifurcation. However, this argument is unpersuasive. As plaintiffs note, the defendants must believe this defense has some merit, or they would not have raised it in their answer (Doc. 19).

In addition, there is no guarantee that severance would avoid the need for two trials. Renth has not offered to waive the defense of qualified immunity; he simply states that his likelihood of success is low regarding the defense. If the *Monell* claims will be tried, then bifurcation of the *Monell* claims and a stay of discovery at this point will prove to be inefficient because it will require that *Monell* discovery be conducted at a later date. Such a stay would in fact delay the resolution of all of the plaintiffs' claims.

Plaintiffs argue that the defendants exaggerate the burden of *Monell* discovery in this matter, and that bifurcation would unnecessarily complicate the discovery process. Plaintiffs contend that bifurcation would be inconvenient and inefficient due to the overlap of evidence that is relevant to both the *Monell* claims and the individual claims against Renth. The Court recognizes that allowing the *Monell* discovery to proceed inevitably will increase the scope and cost of discovery. However, a stay of *Monell* discovery does not necessarily eliminate discovery disputes. A stay of *Monell* discovery may give rise to arguments about whether the plaintiff's discovery requests relate to their *Monell* claims or to their

individual claims against Defendant Renth. Therefore, bifurcation of discovery would inevitably lead to more litigation about where the line between permissible discovery and deferred discovery should be drawn, and it would create inefficiencies relating to the overlapping testimony and need for multiple depositions.

To the extent that the plaintiff's *Monell* discovery requests are overly broad or would impose an undue burden or expense, the Court may tailor the plaintiffs' discovery requests, if necessary. The Court believes this process is better suited to promote judicial economy opposed to staying entirely all *Monell* discovery at this time. As such, the benefits of potentially avoiding the additional scope of *Monell* discovery in this case are not sufficient to outweigh the costs and burden that would be incurred through bifurcation. Therefore, it is clear that bifurcation in this matter would fail to aid in the resolution of this case or promote judicial economy.

**B. Prejudice to Defendant Renth**

In support of defendants' second argument, the defendants claim that Renth will likely suffer undue prejudice if bifurcation is denied. At this stage of the litigation, however, concerns about potential prejudice at trial are premature. Additionally, there is no reason to believe that the Court could not implement tactics such as limiting instructions, FEDERAL RULES OF EVIDENCE, and motions *in limine*, to mitigate potential prejudice that may arise at trial. *See*, e.g. *Cadle v. City*

of Chicago, No. 15 C 4725, 2015 WL 6742070, at *3 (N.D. Ill. Nov. 2, 2015), Medina v. City of Chicago, 100 F. Supp. 2d 893, 897 (N.D. Ill. 2000)).

In the end, the defendants have not made a clear showing of prejudice to Renth in the event that bifurcation is denied. Therefore, the Court denies the motions to bifurcate on the ground that whatever efficiencies may be gained by bifurcation are offset by the potential for confusion of issues and discovery, repetition of testimony, and increased inefficiency. Therefore, the defendants' motion to bifurcate must be denied.

### V. Conclusion

Accordingly, the Court **DENIES** defendants' motion to bifurcate the trial and stay discovery (Doc. 24).

**IT IS SO ORDERED.**

Signed this 9th day of March, 2016.

Digitally signed by Judge David R. Herndon
Date: 2016.03.09 15:30:28 -06'00'

**United States District Judge**